PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | Eastern District of Louisiana | |
|---|---|---|
| Name: LUIS RODRIGUEZ-HERNANDEZ | Prisoner No. 596226 | Case No. |
| Place of Confinement **LOUISIANA STATE PENITENTIARY** | **18 - 4069** | |
| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of Petitioner) | |
| LUIS RODRIGUEZ-HERNANDEZ            V. | DARREL VANNOY, Warden **SECT. BMAG. 2** | |
| The Attorney General of the State of: Louisiana | | |

## PETITION

1.  Name and location of Court which entered the judgment of conviction under attack: **22ⁿᵈ JDC: Parish of St. Tammany.**

2.  Date of judgment of conviction: **January 20, 2012.**

3.  Length of sentence: **Life w/e benefits**

4.  Nature of offense involved (all counts): **First Degree Murder**

5.  What was your plea? (Check one)
    (a) Not guilty            [ X ]
    (b) Guilty                [   ]
    (c) Nolo Contendere       [   ]
    If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

    _____

6.  Kind of trial: (Check one)
    (a) Jury          [X]
    (b) Judge only    [   ]

7.  Did you testify at the trial?
    Yes [   ]      No [X]

8.  Did you appeal from the judgment of conviction?
    Yes [X]      No [   ]

9.  If you did appeal, answer the following:

    (a) Name of Court: **Louisiana First Circuit Court of Appeal.**

    (b) Result: **Conviction and sentence affirmed**

    (c) Date of result: **Not sure; not on Westlaw**

TENDERED FOR FILING

APR 19 2018

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

\\Mepd05\ICS\lp-dconstance80\My Documents\clients\R\Rodriguez-Hernandez #596226\2254 Eastern District.odt

*Luis Rodriguez-Hernandez v. Darrel Vannoy, Warden*   1.

___ Fee _____
___ Process _____
X  Dktd _____
___ CtRmDep _____
___ Doc. No. _____

(d) Grounds raised: **Trial counsel was ineffective for failing to object to the prosecutor expressing his personal opinion to the guilt of Mr. Rodriguez-Hernandez.**

(e) If you sought further review of the decision on appeal by a higher state Court, please answer the following:

    (1) Name of Court: **Louisiana Supreme Court**

    (2) Result: **Conviction and sentence Affirmed**

    (3) Date of result and citation, if known: **September 13, 2013.**

    (4) Grounds raised

(f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

    (1) Name of Court

    (2) Result

    (3) Date of result and citation, if known

    (4) Grounds raised

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any Court, state or federal?
    Yes [X]    No [ ]

11. If your answer to 10 was "yes", give the following information:

    (a) (1) Name of Court: **22nd JDC**

    (2) Nature of proceeding: **Application for Post-Conviction Relief**

    (3) Grounds raised: **Insufficient Evidence; Improper admittance of Melvin Gonzales' prior statement; Mr. Rodriguez-Hernandez's right to testify was taken from him.**

    (4) Did you receive an evidentiary hearing on your petition, application or motion?
    Yes [ ]    No [X]

    (5) Result: **Denied**

    (6) Date of result: **October 13, 2015**

    (b) As to any second petition, application or motion give the same information:
    (1) Name of Court

    (2) Nature of proceeding

    (3) Grounds raised

    (4) Did you receive an evidentiary hearing on your petition, application or motion?

Yes [ ]      No [ ]

(5) Result

(6) Date of result

(c) Did you appeal to the highest state Court having jurisdiction the result of action taken on any petition, application or motion?

(1) First petition, etc.      Yes [X]      No [ ]

(2) Second petition, etc. Yes [ ]      No [ ]

(3) Third petition, etc. Yes [ ]      No [ ]

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

Caution: In order to proceed in the federal Court, you must ordinarily first exhaust your available state   Court remedies as to each ground on which you request action by the federal Court. If you fail to set forth all grounds in  this petition, you  may be  barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state Court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of grand or petit jury which was unconstitutionally selected and impaneled.

(I) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: **The district court abused its discretion when the conviction was obtained with insufficient evidence.**

Supporting FACTS (tell your story *briefly* without citing cases or law): **See Memorandum in Support**

B. Ground two: **Mr. Rodriguez-Hernandez was denied effective assistance of counsel.**

Supporting FACTS (tell your story *briefly* without citing cases or law): **See Memorandum in Support**

C. Ground three: **Improper admittance of co-defendant's statement**

Supporting FACTS (tell your story *briefly* without citing cases or law): **See Memorandum in Support**

D. Ground Four: **Mr. Rodriguez-Hernandez was denied his right to testify**

Supporting FACTS (tell your story *briefly* without citing cases or law): **See Memorandum in Support**

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other Court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them:

14. Do you have any petition or appeal now pending in any Court, either state or federal, as to the judgment under attack?
Yes  [  ]     No  [X]

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) preliminary hearing: John W. Linder, II, 3801 Canal St., Suite 325, New Orleans, LA 70119

(b) Arraignment: John W. Linder, II, 3801 Canal St., Suite 325, New Orleans, LA 70119

(d) At sentencing: John W. Linder, II, 3801 Canal St., Suite 325, New Orleans, LA 70119

(e) On appeal:

(f) In any post-conviction proceeding

(g) On appeal from any adverse ruling in a post-conviction proceeding

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same Court and at the same time?
Yes  [  ]     No  [X]

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes  [  ]     No  [X]
(a) If so, give name and location of Court which imposed sentence to be served in the future:

(b) Give date and length of the above sentence:

(c) Have you filed, or do you contemplate filing any petition attacking the judgment which imposed the sentence to be served in the future?

Yes [ ]    No [X]

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this _19th_ day of _April_ , 2018.

_____

Signature of Petitioner

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

## LUIS RODRIGUEZ-HERNANDEZ

### VERSUS No.:_____

## DARREL VANNOY, Warden

On Petition For Federal Habeas Corpus Pursuant To 28 U.S.C. § 2254;
From the 22nd Judicial District Court, Parish of St. Tammany, State of Louisiana,
Docket Number 465867-3 "B."

Respectfully submitted this 19th day of April, 2018.

LUIS RODRIGUEZ-HERNANDEZ, #596226
CAMP-C/BEAR-1
LA. STATE PENITENTIARY
ANGOLA, LA 70712

**CIVIL PROCEEDINGS**

*PREPARED BY:*
David Constance #304580 Offender Counsel Substitute III
Main Prison Legal Aid Office
Criminal Litigation Team
La. State Penitentiary
Angola, LA 70712

Luis Rodriguez-Hernandez, #596226
Camp-C/Bear-1
La. State Penitentiary
Angola, LA 70712

April 19. 2018
(Date)

Clerk of Court,
U.S. District Court,
Eastern District of Louisiana
500 Poydras Street, Room C-151
New Orleans, LA 70130

RE: *Luis Rodriguez-Hernandez v. Darrel Vannoy, Warden*, Civil No. _____.

Dear Clerk:

   Please find enclosed an Original of my pro se *Petition for Federal Habeas Corpus (28 U.S.C. § 2254) and accompanying Memorandum of Law in Support with attached exhibits* in the above referenced civil matter. I respectfully ask that you please file same into the docket of this court for judicial consideration and disposition.

   Furthermore, please find my application for in pauper status. Should it be determined that I am required to pay the $5.00 filing fee, kindly submit such a notice and allow me not more than thirty (30) days by which to submit funds from my inmate account.

   Your cooperation and time in this matter are greatly appreciated.

Respectfully,

Luis Rodriguez-Hernandez

LR/dec#304580
Enclosures (3)

Cc:   w/encl. District Attorney, St. Tammany Parish

**RECEIVED**

APR 19 2018

Legal Programs Department

SCANNED at LSP and Emailed
4.19.18 by ___. 52 pages
date         initials   No.

## TABLE OF CONTENTS:              Page

TABLE OF AUTHORITIES......................................................................................ii
MEMORANDUM OF LAW IN SUPPORT...........................................................1
PROCEDURAL HISTORY.......................................................................................1
STATEMENT OF THE FACTS...............................................................................2
FEDERAL QUESTIONS PRESENTED..................................................................4
TIMELINESS OF THIS PETITION........................................................................5
STANDARD OF REVIEW.......................................................................................6
ARGUMENT OF LAW.............................................................................................6
ISSUE NO. 1...............................................................................................................6

    Trial counsel was ineffective for failing to object to the prosecutor expressing his personal opinion to the guilt of Mr. Rodriguez-Hernandez................................................6

ISSUE NO. 2...............................................................................................................8

    Whether the evidence was insufficient to convict. *Jackson v. Virginia;* and *In Re: Winship;* and whether appellate counsel was ineffective for failing to assign as Error during Direct Appeal; *Evitts v. Lucey*..................................................................8

    Insufficient Evidence............................................................................................8

    Ineffective assistance of counsel.......................................................................15

ISSUE NO. 3.............................................................................................................16

    Mr. Rodriguez-Hernandez contents that the district court abused its discretion with the improper admittance of Melvin Gonzales' prior statement as impeachment evidence, in violation of the Sixth and Fourteenth Amendments to the United States Constitution; and whether counsel was ineffective for failing to object; *Strickland v. Washington; Sixth Amendment to the United States Constitution*.................................16

    Improper admittance of prior statement..........................................................16

    Ineffective assistance of counsel.......................................................................21

    Deficient performance.........................................................................................21

    Prejudice................................................................................................................24

ISSUE NO. 4.............................................................................................................25

    Mr. Rodriguez-Hernandez's 5th, 6th, and 14th Amendment rights of the United States Constitution were violated when his right to testify was taken from him....................25

    Standard of Review: Right to Testify................................................................25

    Argument...............................................................................................................25

CONCLUSION AND PRAYER..............................................................................29
CERTIFICATE OF SERVICE...............................................................................30

## TABLE OF AUTHORITIES: Page

## U.S. CONSTITUTION:

Fifth and Fourteenth Amendments to the United States Constitution............................................14, 26, 29

Fourteenth Amendment to the United States Constitution............................................14, 16, 26, 29

Sixth Amendment to the United States Constitution............................................16, 21, 25

Sixth and Fourteenth Amendments to the United States Constitution............................................14, 16

## FEDERAL CASES:

Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942)...................21

Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984), cert. denied, 469 U.S. 956 (1984)..........15

Artuz v. Bennett, 121 S.Ct. 361, 531 U.S. 4 (2000).......................................................................5

Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).........................................14

Carey v. Saffold, 122 S.Ct. 2134, 536 U.S. 214 (2002)..................................................................5

Douglas v. Wainwright, 714 F.2d 1532 (11th Cir. 1983).................................................................22

Dupuy v. Cain, 210 F.3d 582 (5th Cir. 2000)...............................................................................9

Evitts v. Lucey, 469 U.S. 387 (1985).................................................................................15, 23

Faretta v. California, 422 U.S., at 819, no. 15, 95 S.Ct. 2525 (1975).............................................26

Flowers v. Blackburn, 779 F.2d 1115 (5th Cir. 1986).....................................................................12

Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)........................................21

Goodwin v. Balkcom, 684 F.2d 794, 805 (11th Cir. 1982).............................................................22

Hester v. United States, 335 F.Appx. 949, 951 (11th Cir. 2009)....................................................27

House v. Balkcom, 725 F.2d 608 (11th Cir. 1984).......................................................................22

In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L. Ed. 2d 368 (1970)...............................................8

Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed.2d 60 (1979).......................................9, 10

Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L. Ed. 1461 (1938)..........................................21

Kimmelman v. Morrison, 477 U.S. 365, 106 S.Ct. 2574, 2589, 91 L.Ed.2d 305 (1986)........................23

McKaskle v. Wiggins, 465 U.S. 168, 177, n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).......................25

McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)...................................21

Mylar v. Alabama, 671 F.2d 1299 (11th Cir. 1982).......................................................................15

Porter v. Wainwright, 805 F.2d 930, 933 (11th Cir. 1986)..............................................................22

Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).................................................21

Rock v. Arkansas, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)............................................25

Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)......................................12

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)...........7, 15, 16, 21, 22

Tyler v. Kemp, 755 F.2d 741 (11th Cir. 1985)............................................................................22

U.S. v. Teague, 908 F.2d 752, 759 (11th Cir. 1990).....................................................................29

United States v. Teague, 953 F.2d 1525 (11th Cir).....................................................................27

United States v. Walker, 773 F.2d 1173, 1179 (5th Cir. 1985)........................................................25

Wade v. Armontrout, 798 F.2d 304 (8th Cir. 1986)......................................................................22

Whitehurst v. Wright, 592 F.2d 834 (5th Cir. 1979).....................................................................18

Young v. Zant, 677 F.2d 792, 798 (11th Cir. 1982).....................................................................22

## LA. CONSTITUTION:

Art. I, Sec. 15 of the Louisiana Constitution of 1974..................................................14
Louisiana Constitution of 1974, Art. I, § 2, 13, and 19..............................................14

## STATUTORY PROVISIONS:

28 U.S.C.A. § 2244(d)(1)..................................................................................................5
28 U.S.C.A. § 2244(d)(2)..................................................................................................5
28 U.S.C.A. § 2254................................................................................................1, 6, 29
28 U.S.C.A. § 2254(d)(2)..................................................................................................6
LSA-C.E. Art. 607 D(2)..................................................................................................18
LSA-C.E. Art. 607, subd. D(2)........................................................................................17
LSA-C.E. Art. 802...........................................................................................................17
LSA-R.S. 14:10................................................................................................................12
LSA-R.S. 14:30..................................................................................................................1
LSA-R.S. 15:438................................................................................................................9
R.S. 14:42........................................................................................................................12
§ 14:24: Principals...........................................................................................................11
§ 14:30.1 Second Degree Murder...................................................................................11
§ 14:31 Manslaughter......................................................................................................14
§ 30. First Degree Murder..............................................................................................11

## STATE CASES:

Frett v. State, 378 S.E.2d 249, 251 (S.C. 1988).............................................................22
Midboe v. Com'n on Ethics for Pub. Empl., 530 So.2d 351 at 348 (La. 1994)...............7
State v. Cedrington, 98-578 (La. App. 5th Cir. 12/16/98), 725 So.2d 565....................13
State v. Chism, 436 So.2d 464 (La. 1983).......................................................................10
State v. Copes, 566 So.2d 652, 654 (La. App. 2 Cir. 1990)...........................................10
State v. Cousin, 710 So.2d 1065 (La. 1998)....................................................................17
State v. Eason, 460 So.2d 1139 (La. App. 2nd Cir. 1984)................................................9
State v. Ford, 544 So.2d 616 (La. App. 3rd Cir. 1989)..................................................18
State v. Fuller, 454 So.2d 119 (La. 1984).......................................................................22
State v. Hampton, 00-522 (La. 3/22/02), 818 So.2d 720................................................27
State v. Holmes, 388 So.2d 722 (La. 1980)...............................................................12, 13
State v. Jones, 610 So.2d 782 (La. 1992)..........................................................................9
State v. Kimble, 375 So.2d 76, 79 (La. 1979).................................................................18
State v. McAlister, 366 So. 2d 1240 (La. 1978)..............................................................13
State v. Ray, 259 La. 105, 249 So.2d 540, 542 (1971)...................................................18
State v. Richardson, 96-2598 (La. App. 4th Cir. 12/17/97), 703 So.2d 1371.................12
State v. Sparrow, 612 So.2d 191, 199 (La. App. 4 Cir. 1992)........................................22
State v. Sutton, 436 So.2d 471 (La. 1983)......................................................................10
State v. Washington, 491 So.2d 1337, 1339 (La. 1986)....................................................7
State v. West, 568 So.2d 1019 (La. 1990).......................................................................12
State v. White, 450 So.2d 648, 651 (La. 1984)...............................................................18
State v. Williams, 423 So.2d 1048 (La. 1982)................................................................14

State v. Wright, 445 So.2d 1198 (La. 1984)........................................................................9
Succession of Cloud, 530 So.2d 1146, 1150 (La. 1988)........................................................7
Waldrop v. State, 506 So.2d 273, 275 (Miss. 1987)............................................................22
Yarborough v. State, 529 So.2d 659, 662 (Miss. 1988)........................................................22

## MISCELLANEOUS:

Graham, "The Relationship Among Federal Rules of Evidence 607, 801 (d)(1)(A), and 403................18
Louisiana State Bar Articles of Incorporation, Art. XVI, Rules of Professional Conduct, Rule 3.4(4)....7
Rule of Professional Conduct 3.4(e)................................................................................7
Rule of Professional Conduct 3.4(e)................................................................................8

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**LUIS RODRIGUEZ-HERNANDEZ**

-Versus-

**DARREL VANNOY, Warden**

CIVIL ACTION

NUMBER:

JUDGE:

MAGISTRATE:

## MEMORANDUM OF LAW IN SUPPORT
### OF PETITION FOR FEDERAL HABEAS CORPUS

**MAY IT PLEASE THE COURT:**

NOW INTO COURT comes Luis Rodriguez-Hernandez, *Pro-Se* Petitioner, who respectfully presents his "Memorandum of Law in Support of Petition for Federal Habeas Corpus"; and who respectfully prays this Honorable Court will accept and consider same in connection with his "Petition for Federal Habeas Corpus," pursuant to *28 U.S.C.A. § 2254*.

### PROCEDURAL HISTORY

Luis Rodriguez-Hernandez was charged along with three others in a one count Bill of Indictment with a single count of First Degree Murder in violation of LSA-R.S. 14:30 (Rec.p. 42). The Bill of Indictment charged that the offense occurred on February 27, 2009, in the Parish of St. Tammany. The State did not seek the death penalty and Mr. Rodriguez-Hernandez was tried alone.

Mr. Rodriguez-Hernandez was found guilty by a jury on January 20, 2012, and sentenced on February 15, 2012. On March 4, 2013, through counsel assigned by the Louisiana Appellate Project, Mr. Rodriguez-Hernandez filed his Direct Appeal. On September 13, 2013, the Louisiana First Circuit Court of Appeals affirmed Mr. Rodriguez-Hernandez's sentence and conviction. Mr. Rodriguez-

Hernandez filed his Application for Post-Conviction relief in the Twenty-Second Judicial District Court on August 6, 2015, which was denied October 13, 2015. Petitioner filed an Application for Supervisory Writ of Review with the First Circuit Court of Appeal on November 12, 2015, which was denied February 10, 2016. On June 5, 2017, the Louisiana Supreme Court denied relief. However, Mr. Rodriguez-Hernandez did not receive notice of such until after February 28, 2018.

Mr. Rodriguez-Hernandez requests that his Honorable Court consider this instant petition for federal habeas corpus as timely as he was not timely notified of the Ruling from the Supreme Court (See: Exhibits "A" and "B").

### STATEMENT OF THE FACTS

On February 28, 2009, Detective Alvin Hotard with the St. Tammany Parish Sheriff's Office reported to a home in Covington belonging to the victim and his wife, Gina Scramuzza, where the victim's body was found in the laundry room. The home had been ransacked, and many items were missing. As police investigated the scene, Gina made statements confirming her involvement in her husband's murder. The investigation led officers to identify Carlos Rodriguez, Erly Montoya, and Mr. Rodriguez-Hernandez (as well as Gina) as all having been involved with the murder.[1]

Mr. Rodriguez-Hernandez gave two taped statements after he was arrested, and both were played at trial. According to his second statement, Gina drove Mr. Rodriguez-Hernandez, Rodriguez, and Montoya to the home where she and the victim lived, and the three men waited for the victim to arrive. Mr. Rodriguez-Hernandez indicated that he and Montoya planned to take the six-foot-two-inch tall, 236 pound victim down to the ground "for [Rodriguez]." When the victim arrived, Montoya pointed a gun at him and told him to get on the ground. According to Mr. Rodriguez-Hernandez, he and Montoya grabbed the victim. However, as the victim went to the ground under his own volition, Montoya and

---

[1]   Carlos Rodriguez, Erly Montoya, and Gina Scramuzza were charged with First Degree Murder in the same Indictment. The State elected to sever the charges against Mr. Rodriguez-Hernandez and try him separately.

Mr. Rodriguez-Hernandez fell with him. Mr. Rodriguez-Hernandez stated that Rodriguez then tied up the victim. Mr. Rodriguez-Hernandez further indicated that he seized several items from the house and placed them into a vehicle that was parked in the garage. While loading the vehicle, Mr. Rodriguez-Hernandez heard a noise, reentered the house, and saw the victim kicking. Mr. Rodriguez-Hernandez grabbed the victim's legs and moved them away from the item he was kicking. According to Mr. Rodriguez-Hernandez's statement, after he moved the victim's legs, he went back into the garage. Minutes later, Rodriguez exited the home and the three men left. Many of the items taken from the home were subsequently located in defendant's apartment.

Dr. Michael Defatta, Chief Deputy Coroner with the St. Tammany Parish Coroner's Office, testified that the victim's cause of death was asphyxia due to strangulation and blunt-force trauma. He also testified that abrasions and bruises on the victim's body were consistent with binding of the wrists.

Mr. Rodriguez-Hernandez is a victim of circumstances in this case. Mr. Rodriguez-Hernandez had accompanied a person he considered to be a friend of two weeks (Carlos Rodriguez), assisting one of Carlos' lady friends with a "Scam" in order for her to obtain money from her insurance company on a falsified "Burglary" of her home. At NO time was Mr. Rodriguez-Hernandez informed that this had been set up in order to commit a previously planned homicide in the midst of an affair committed by Carlos. Mr. Rodriguez-Hernandez was not even aware of the homicide until he had been arrested for this offense.

According to the statements by the victim's wife in this matter, Mr. Rodriguez-Hernandez was hired to move some stuff from the victim's home (for an insurance scam). Mr. Rodriguez-Hernandez was not aware of the affair between Carlos and the victim's wife; nor was he aware of the fact that this was set up in order to kill the victim. Furthermore, Gina Scramuzza (victim's wife) had informed the authorities that, "May of 2009 would make exactly one year that she had a friendship with Rodriguez," referring to

Carlos Rodriguez.

Gina Scramuzza informed the authorities during a taped statement that she had given Carlos a key to the residence and, in fact, brought Carlos and his three other co-defendants to her residence; thus, proving that this incident could not have been any type of burglary.

The evidence against Carlos Rodriguez was overwhelming in the fact that the authorities had used the company truck's GPS to track his movements the day of the murder and the fact that the victim's wife informed the authorities that she and Carlos had carefully planned the murder of her husband, and to have it appear as if this had happened during the course of burglary. Furthermore, soon after the murder, the victim's wife, for some unknown reason, informed the authorities that this was a "murder for hire" due to an extra-marital affair that she was having with Carlos. Reviewing the evidence during Carlos' pre-trial, there was nothing that would implicate Mr. Luis Rodriguez-Hernandez in the murder. The entire facts of this case came to light when Gina Scramuzza was informed that Carlos Rodriguez was married, and the fact that his wife was pregnant (See: CDP-000012-15, 23, 48-50)

Although the State produced overwhelming evidence against Carlos Rodriguez and Gina Scramuzza, the State failed to produce any evidence, direct or circumstantial, to prove beyond a reasonable doubt that Mr. Rodriguez-Hernandez had participated in the murder, or that he had any prior knowledge or planning of the murder.

### FEDERAL QUESTIONS PRESENTED

1. **Did the state courts abuse their discretion when the conviction was obtained with insufficient evidence, which is contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States?** *Jackson v. Virginia*; **Sixth and Fourteenth Amendments to the United States Constitution. Mr. Rodriguez-Hernandez answers: Yes.**

2. **Was Mr. Rodriguez-Hernandez denied effective assistance of trial counsel which resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.** *Strickland v. Washington*; **Sixth and Fourteenth Amendments to the United States Constitution. Mr. Rodriguez-Hernandez answers: Yes.**

3. Was Mr. Rodriguez-Hernandez denied a fair and impartial trial with the improper admittance of Melvin Gonzales' prior statement as impeachment evidence, in violation fo the Sixth and Fourteenth Amendments to the United States Constitution; and whether counsel was ineffective for failing to object, which resulted in a decision that was based on an unreasonable application of clearly established federal law as determined by the United States Supreme Court? Sixth and Fourteenth Amendments to the United States Constitution. Mr. Rodriguez-Hernandez answers: Yes.

4. Was Mr. Rodriguez-Hernandez' constitutional rights denied when his right to testify in his own behalf were violated, which resulted in a decision that was based on an unreasonable application of clearly established federal law as determined by the United States Supreme Court? *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) ; *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); Fifth, Sixth and Fourteenth Amendments to the United States Constitution. Mr. Rodriguez-Hernandez answers: Yes.

## TIMELINESS OF THIS PETITION

A 1-year period of limitation shall apply to a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court. The limitation period shall run from the latest of (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by state action in violation of the Constitution of laws of the United States is removed, if the applicant was prevented from filing by such state action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. *28 U.S.C.A. § 2244(d)(1).* The time during which a properly filed Application for state Post-Conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. *28 U.S.C.A. § 2244(d)(2).* *Artuz v. Bennett*, 121 S.Ct. 361, 531 U.S. 4 (2000); *Carey v. Saffold*, 122 S.Ct. 2134, 536 U.S. 214 (2002).

Mr. Rodriguez-Hernandez timely filed for Writs of Review to the Louisiana Supreme Court on February 25, 2016. On February 26, 2018, Mr. Rodriguez-Hernandez wrote the Louisiana Supreme Court for a Status Check on his pleadings. On February 28, 2018, the Supreme Court responded with, "We are returning you papers to you unfiled. As the enclosed action sheet reflects the Court denied your application on June 5, 2017 under number 2016-KH-0505." The Clerk had also included a copy of the Court's Ruling and Per Curiam and a copy of the district court's October 15, 2015 ruling.

On March 6, 2018, Mr. Rodriguez-Hernandez wrote the B-Line Package Room to inquire as to the dates this institution has received and delivered Legal Mail to him. According to the printout from the B-Line Package Room, "No records were found for the year 2017" (See: Exhibits "A" and "B").

## STANDARD OF REVIEW

A petition for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in the state court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *28 U.S.C.A. § 2254(d)(2). Williams v. Taylor,* 120 S.Ct. 1495, 529 U.S. 362 (2000); *Yarborough v. Alvarado,* 124 S.Ct. 2140, 541 U.S. 652 (2004).

## ARGUMENT OF LAW
## ISSUE NO. 1

**Trial counsel was ineffective for failing to object to the prosecutor expressing his personal opinion to the guilt of Mr. Rodriguez-Hernandez.**

In the Closing Argument of the prosecutor, in arguing to the jury that Mr. Rodriguez-Hernandez was guilty of two predicate offenses to justify the jury returning a conviction of First Degree Murder,

expressed his personal opinion regarding the guilt of Mr. Rodriguez-Hernandez:

> And that murder was done during the commission of a robbery or a kidnapping. That's one definition of First Degree Murder. And you have in my opinion both a robbery and kidnapping (emphasis added). (Rec.p. 851).

**Louisiana State Bar Articles of Incorporation, Art. XVI, Rules of Professional Conduct, Rule 3.4(4) provides:**

**Rule 3.4 Fairness to Opposing Party and Counsel**
A lawyer shall not:
(e) In trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused. (emphasis added).

Plainly, the prosecutor violated Rule of Professional Conduct 3.4(e). However, defense counsel failed to object and the jury was left to consider the prosecutor's personal opinion regarding the guilt of Mr. Rodriguez-Hernandez. The standards in the Rules of Professional Conduct have the force and effect of substantive law. See: *Midboe v. Com'n on Ethics for Pub. Empl.*, 530 So.2d 351 at 348 (La. 1994); *Succession of Cloud*, 530 So.2d 1146, 1150 (La. 1988). This ethical rule was written to prevent lawyers from unfairly prejudicing jurors.

Under the standard of review for ineffective assistance of counsel set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Louisiana Supreme Court in *State v. Washington*, 491 So.2d 1337, 1339 (La. 1986), a reviewing court must reverse a conviction if the defendant establishes that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect.

Although the Court's jury instructions included the admonition that the argument of counsel is not evidence, simply telling the jury that the argument of counsel is not evidence does not magically erase

the prejudice of unethical argument from the minds of the jurors (one cannot un-ring a bell). Otherwise, Rule of Professional Conduct 3.4(e) would be unnecessary.

The performance of defense counsel was plainly deficient in failing to object to the prosecutor expressing his personal opinion as to the guilt of Mr. Rodriguez-Hernandez. The desired result by the prosecutor was achieved; the jury convicted Mr. Rodriguez-Hernandez of First Degree Murder instead of a lesser included offense. As a representative of the State, an experienced prosecution's personal opinion would certainly carry a great deal of weight with the jurors. It invited the juror to convict Mr. Rodriguez-Hernandez of First Degree Murder once it concluded that he was involved in some way with the murder.

Mr. Rodriguez-Hernandez's right to a fair trial includes the right to have the jury fairly consider convicting him of a responsive verdict. His right to have the jury fairly consider convicting him of a responsive verdict was denied by the unethical argument of the prosecutor and the failure of defense counsel to object.

Furthermore, the failure of defense counsel to make a contemporaneous objection precludes directly attacking the improper argument of the prosecutor.

## ISSUE NO. 2

**Whether the evidence was insufficient to convict. *Jackson v. Virginia*; and *In Re: Winship*; and whether appellate counsel was ineffective for failing to assign as Error during Direct Appeal; *Evitts v. Lucey*.**

*Insufficient Evidence:*

The Due Process Clause of the Fourteenth Amendment protects persons accused of a crime against conviction unless the State proves every element of the offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L. Ed. 2d 368 (1970).[2]

---

2  This type of error has been recognized as patent error preventing conviction for the offense, La.C.Cr.P. art. 920(2), see indicative listing at *State v. Guillot*, 200 La. 935, 9 So.2d 235, 239 (1942); *State v. Crosby*, 338 So. 2d 584, 588 (La.1976).

Both the La. Supreme Court and U.S. Supreme Court have reviewed insufficient evidence claims raised in post conviction petitions. First and foremost, the United States Supreme Court set the standard in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed.2d 60 (1979). On writs from the denial of insufficient evidence claim raised in a state post conviction application. *State v. Jones*, 610 So.2d 782 (La. 1992), 91-KH-1101, *reversed*, Relator sought Post-Conviction Relief in the district court again challenging the sufficiency of evidence. The district court denied relief. The Fourth Circuit affirmed that ruling, and the Louisiana Supreme Court, after review of the record, concluded that relator's claim has merit and reverse accordingly.

In *Jackson*, the United States Supreme Court set forth the legal standard of review, *i.e.*, ". . . whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt ..." In the court's view, the fact-finder's role as weigher of evidence was preserved by considering all of the evidence in the light most favorable to the prosecution: ". . . The criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *Jackson*, 443 U.S. at 319, 99 S.Ct., at 2790, 61 L.Ed.2d at 573-574. This standard is applied with "explicit reference to the substantive elements of the criminal offense as defined by state law." *Id. at* 324 n. 16, 99 S.Ct. at 2791 n. 16. *Dupuy v. Cain*, 210 F.3d 582 (5th Cir. 2000).

"The rule as to circumstantial evidence is that, assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438. However, this statutory rule is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test whenever the state relies on circumstantial evidence to prove an element of the crime. *State v. Wright*, 445 So.2d 1198 (La. 1984); *State v. Eason*, 460 So.2d 1139 (La. App. 2nd Cir. 1984), *writ denied* 463 So.2d 1317 (La. 1985). Although the

circumstantial evidence rule may not establish a stricter standard of review than the more general reasonable juror's reasonable doubt formula, it emphasizes the need for careful observance of the usual standard and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence. *State v. Chism*, 436 So.2d 464 (La. 1983); *State v. Sutton*, 436 So.2d 471 (La. 1983). Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. *State v. Wright*, supra; *State v. Eason*, supra." *State v. Copes*, 566 So.2d 652, 654 (La. App. 2 Cir. 1990).

In light of the overwhelming amount of inconsistent testimony, and after viewing evidence in light most favorable to prosecution, any rational trier of fact could not have found Mr. Rodriguez-Hernandez guilty of every essential element of the crime beyond a reasonable doubt. U.S.C.A. Const. Amend. 14. (See: *Jackson v. Virginia*, 99 S.Ct. 2781, 443 U.S. 307 (U.S. 1979); *Winship*, supra).

In this case, no evidence linked Mr. Rodriguez-Hernandez to the killing; No evidence linked Mr. Rodriguez-Hernandez as a Principal to this murder; There is NO evidence to show that Mr. Rodriguez-Hernandez knew that Carlos Rodriguez had the intention to commit a murder.

It should be noted that the only statement informing the jury that Mr. Rodriguez-Hernandez was actually a participant, or a principal to this murder, was a statement given by Mr. Melvin Gonzales, who was subsequently arrested for possession of an illegal narcotic. Mr. Gonzales further testified to the fact that this statement was given in light of the fact that he had been arrested for possession of cocaine during the time that Mr. Rodriguez-Hernandez was arrested for the charge of murder; and the fact that he had given this statement due to the fact that he was promised that the charge for possession would "disappear" if he assisted the authorities (Rec.pp. 797-819).

In order to convict Mr. Rodriguez-Hernandez of First Degree Murder, the State must prove the following:

### § 30. First Degree Murder

A. First Degree Murder is the killing of a human being:

(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of Aggravated Kidnapping, Aggravated Second Degree Kidnapping, Aggravated Escape, Aggravated Arson, Aggravated Rape, Forcible Rape, Aggravated Burglary, Armed Robbery, Assault by Drive-by Shooting, First Degree Robbery, Second Degree Robbery, Simple Robbery, Terrorism, Cruelty to Juveniles, or Second Degree Cruelty to Juveniles.

(2) When the offender has a specific intent to kill or to inflict great bodily harm upon a fireman, peace officer, or civilian employee of the Louisiana State Police Crime Laboratory or any other forensic laboratory engaged in the performance of his lawful duties, or when the specific intent to kill or to inflict great bodily harm is directly related to the victim's status as a fireman, peace officer, or civilian employee.

(3) When the offender has a specific intent to kill or to inflict great bodily harm upon more than one person.

(4) When the offender has specific intent to kill or inflict great bodily harm and has offered, has been offered, has given, or has received anything of value for the killing.

In order to convict Mr. Rodriguez-Hernandez of Second Degree Murder, the State must prove the following:

### § 14:30.1 Second Degree Murder

A. Second Degree Murder is the killing of a human being:

(1) When the offender has a specific intent to kill or to inflict great bodily harm; or

(2) When the offender is engaged in the perpetration or attempted perpetration of Aggravated Rape, Forcible Rape, Aggravated Arson, Aggravated Burglary, Aggravated Kidnapping, Aggravated Escape, Assault by Drive-By Shooting, Armed Robbery, First Degree Robbery, Second Degree Robbery, Simple Robbery, Cruelty to Juveniles, Second Degree Cruelty to Juveniles, or terrorism, even though he has no intent to kill or to inflict great bodily harm.

In order to convict Mr. Rodriguez-Hernandez of Principal to a murder, the State must prove the following:

### § 14:24: Principals

All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.

It should be noted that the above-mentioned charges are, in fact, "specific intent" crimes, which require that in order to be convicted of these charges, one must have the specific mental intent of committing such. That is not the case here.

"Specific criminal intent is that state of mind which exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10.

In order to support a defendant's conviction as a principal, the State must show that the defendant had the requisite mental state for the crime. *State v. Richardson*, 96-2598 (La. App. 4th Cir. 12/17/97), 703 So.2d 1371.

In a first degree murder prosecution involving more than one defendant, a principal instruction that "all persons knowing the unlawful intent of the person committing the crime are principals and are equal offenders and are subject to the same punishment" violates due process because it relieves the State of the burden of proof on the critical question of state of mind. *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Flowers v. Blackburn*, 779 F.2d 1115 (5th Cir. 1986); *State v. West*, 568 So.2d 1019 (La. 1990).

*State v. Holmes*, 388 So.2d 722, 726 (La. 1980), stated:

"[U]nder R.S. 14:42, not all principals are automatically guilty of the same grade of offense. One who aids and abets in the commission of a crime may be charged and convicted with a higher or lower degree of the crime, depending upon the mental element proved at trial. Thus, an individual may only be convicted as a principal for those crimes for which he personally has the requisite mental state. In the case of a first degree murder conviction, the requisite mental state is that the defendant had the specific intent to kill. It is not enough to find merely that his coconspirator or accomplice had the necessary mental state, since this intent cannot be inferred to the accused. It must be shown that this accused also had the specific intent to kill." (Emphasis added and citation omitted).

*Holmes*, 388 So.2d at 726.

In *Flowers*, the United States Fifth Circuit held that the principal instruction: "all participants in a

crime are principals and equal offender, and subject to the same punishment" relieved the State of the burden of proof on the element of specific intent.

In *West*, supra, the Louisiana Supreme Court held that the principal instruction that "persons knowing the unlawful intent of the person committing the crime are principals and equal offender and subject to he same punishment," relieved the State of its constitutional burden of proof on the critical question of state of mind, and thus, violated due process requirement that the State prove every element of crime charged beyond a reasonable doubt. See also: *State v. Cedrington*, 98-578 (La. App. 5th Cir. 12/16/98), 725 So.2d 565.

"An individual may only be convicted as a principal for those crimes for which he personally had the requisite mental state." "Intent (of a co-conspirator or accomplice) cannot be inferred to the accused. It must be shown that this accused had specific intent to kill." *State v. Holmes*, 388 So.2d 722 (La. 1980). "Not all persons charged as principals are "automatically" guilty of the same grade of the offense. The grade depends on the mental element proved at trial. *State v. McAlister*, 366 So. 2d 1240 (La. 1978).

It should be noted that the State failed to prove the element of any of the above-mentioned statutes in regards to Mr. Rodriguez-Hernandez. The State may contend the fact that Mr. Rodriguez-Hernandez could be found guilty due to Mr. Gonzales' statement given to the authorities. However, one must still note that Mr. Gonzales informed the Court that his statement only contained the information that his attorney and the authorities had given him in regards to this case.

As a whole, the evidence that can be proven in this matter, is the fact that Mr. Rodriguez-Hernandez had been promised payment for helping to assist in what was purported to be an "Insurance Scam" with a person that he had only known two weeks (Carlos Rodriguez). Mr. Rodriguez-Hernandez was not informed of the fact that Mr. Carlos and the victim's wife had every intention of killing the victim in

this matter.

In order to convict Mr. Rodriguez-Hernandez of Manslaughter, the State must prove the following:

**§ 14:31 Manslaughter**

A. Manslaughter is:

1. A homicide which would be murder under either Article 30 (First Degree Murder) or Article 30.1 (Second Degree Murder), but the offense is committed in sudden passion of heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or

(A) A homicide committed, without any intent to cause death or great bodily harm.

(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or

(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Article 30 or 30.1.

Accordingly, as the State has failed to prove ANY element of Mr. Rodriguez-Hernandez's knowledge, or intent of a murder, Burglary, or Kidnapping, Mr. Rodriguez-Hernandez's conviction was obtained without sufficient evidence; a violation of the Sixth and Fourteenth Amendments to the United States Constitution; Louisiana Constitution of 1974, Art. I, § 2, 13, and 19.

WHEREFORE, for the foregoing reasons this Honorable Court must vacate Mr. Rodriguez-Hernandez's conviction and sentence. The State has failed to meet its burden of proof for the sufficiency of evidence of either First Degree Murder, Second Degree Murder, Manslaughter, or Principal to the aforementioned. When a conviction is reversed for insufficient evidence, the double jeopardy provision of Art. I, Sec. 15 of the Louisiana Constitution of 1974 and the Fifth and Fourteenth Amendments to the United States Constitution prohibit a retrial of the defendant. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *State v. Williams*, 423 So.2d 1048 (La. 1982).

Consequently, Mr. Rodriguez-Hernandez should be ordered discharged.

***Ineffective Assistance Of Counsel:***

Mr. Rodriguez-Hernandez contends that he was denied effective assistance of counsel during the course of his Direct Appeal. A brief review of the record reveals that the State presented insufficient evidence during the course of the proceedings. Although a Claim of Insufficient Evidence may be argued during the course of collateral review, it is best brought forth on Appeal.

The accused also had the right to effective assistance of counsel on appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984), *cert. denied*, 469 U.S. 956 (1984); *Mylar v. Alabama*, 671 F.2d 1299 (11th Cir. 1982), *cert. denied*, 463 U.S. 1229 (1983).

In *Alvord*, the Eleventh Circuit held that "the best way to evaluate" a claim of ineffective assistance of counsel on appeal "is to examine the alleged trial errors to see if they contain sufficient merit . . . that appellate counsel can be faulted for not having raised them." 725 F.2d at 1291.

However, the mere presence of an attorney does not satisfy the constitutional guarantee of counsel. As the Supreme Court has often noted, an accused is entitled to representation by an attorney, whether retained or appointed. "Who plays the role necessary to ensure that the trial is fair". Morrison, 477 U.S. At 377, 106 S.Ct. At 2584, quoting *Strickland v. Washington*, 466 U.S. 668, 685, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 274 (1984). "In other words, the right to counsel is the right to effective assistance of counsel, citing *Evitts v. Lucey*, 469 U.S. 387, 395-96, 105 S.Ct. 830, 835-36, 83 L.Ed 2d 821 (1985).

Louisiana Appellate Project attorney, Frank Sloan, filed one Issue during the course of the Direct Appeal. This Issue was, "Trial counsel was ineffective for failing to object to the prosecution expressing his personal opinion to the guilt of Mr. Rodriguez-Hernandez."

Surely, after a complete review of the record available prior to the filing of the Original Brief, appellate counsel should have noted that the State failed to meet its burden of proof beyond a

reasonable doubt of First Degree Murder, or any of the responsive verdicts in this matter. The State had based its entire case on "circumstantial evidence" (at best), along with the introduction of an improperly admitted statement by Mr. Gonzales.

Moreover, it is a well established fact that a Claim of ineffective assistance of counsel is best brought on collateral review in order to expand the record and obtain testimony during the course of an evidentiary hearing to resolve the issue of ineffectiveness.

WHEREFORE, this Honorable Court should find that the appellate counsel was ineffective for failing to bring the issue of insufficient evidence on Appeal as an Assignment of Error.

## ISSUE NO. 3

**Mr. Rodriguez-Hernandez contents that the district court abused its discretion with the improper admittance of Melvin Gonzales' prior statement as impeachment evidence, in violation of the Sixth and Fourteenth Amendments to the United States Constitution; and whether counsel was ineffective for failing to object; *Strickland v. Washington; Sixth Amendment to the United States Constitution*.**

*Improper admittance of prior statement:*

The taped statement used by the State from Luis' friend, Melvin Gonzales was improperly presented to the jury. Mr. Gonzales testified during trial, that at the time of his statement, that he had been arrested for the cocaine that had been found in the couch during the execution of the arrest warrant for Mr. Rodriguez-Hernandez. Mr. Gonzales testified that the statement that he gave was in accordance with what the Officers and his attorney had told him to say in order to get some assistance with amount of time for the drug charge (possibly even having the charge dismissed; See: Rec.pp. 804, 808, 810-11, 817, 818). However, Mr. Gonzales was still given ten years for the possession (See: Rec.pp. 797-819).

Mr. Gonzales further testified that he had not given the authorities information concerning Mr. Rodriguez-Hernandez and the murder for which Mr. Rodriguez-Hernandez was accused. However, the

State alleges that the prior statement was being presented to the jury in an attempt to impeach Mr. Gonzales during the course of the trial. The State even requested that the Court allow them to treat Mr. Gonzales as a "hostile witness" during the direct examination (See: Rec. p. 805).

In *State v. Cousin*, 710 So.2d 1065 (La. 1998), the Louisiana Supreme Court held that: "(1) a witness' prior inconsistent statement was not admissible to impeach him after he testified that he had not provided information to the authorities."

In *Cousin*, supra, after a witness testified that he had not provided authorities with information about the case, the State was not entitled to present extrinsic evidence to contradict that denial for the purpose of impeachment, when a witness other than the defendant is impeached by the admission or a prior inconsistent statement is admissible only on the issue of credibility and not as substantive evidence of the defendant's guilt. LSA-C.E. Art. 607, subd. D(2).

In *Cousin*, after a witness testified that he had not provided authorities with information about the case, the state was not entitled to present extrinsic evidence to contradict that denial for the purpose of impeachment; the so-called impeachment evidence had little or no probative value as to the substance of the witness' in-court testimony and had the potential for extreme prejudice if misused by the jury for the substance of the inculpatory content.

The trial court's erroneous admission of a witness' prior inconsistent, after the witness testified at trial that he had not provided information to the authorities was not harmless; the improperly admitted evidence was in the nature of a confession, and was thus very strong evidence of the defendant's guilt, the alleged statements were highly inflammatory, and there was no physical evidence to connect the defendant to the charged offense.

Generally, an out-of-court statement, such as the one made by Mr. Gonzales, is inadmissible as hearsay. LSA-C.E. Art. 802. This classification, of course, has very limited applicability. It must be

noted that in this case, Mr. Gonzales' prior statement was not made under oath, nor had it been presented in a Preliminary Examination as a matter of truth to the fact.

Nevertheless, LSA-C.E. Art. 607 D(2) permits the introduction of a prior inconsistent statement, even though it is inadmissible hearsay, for the limited purpose of attacking the credibility of the witness. Although such evidence is evidence is admissible for impeachment, the Louisiana Supreme Court has steadfastly recognized that "when a witness other than the defendant is impeached by the admission of a prior inconsistent statement incriminating the defendant, the statement is admissible only on the issue of credibility and not as substantive evidence of the defendant's guilt." *State v. Ray*, 259 La. 105, 249 So.2d 540, 542 (1971); *State v. White*, 450 So.2d 648, 651 (La. 1984); *State v. Kimble*, 375 So.2d 76, 79 (La. 1979); along with a plethora of cases cited in *State v. Cousin*, supra. As the State was not attacking the credibility of Mr. Gonzales in this matter, the prior statement should thus be held to be inadmissible hearsay evidence.

According to the Official Comments (1988), (a) Paragraph A follows Federal Rule of Evidence 607. It substantially changes Louisiana's traditional common-law approach to attacking the credibility of witnesses. Abuse of this provision should be prevented by judicial discretion. For example, the court should prohibit a party's attacking the credibility of his own witness when it is clear that he is doing so primarily with the intention of adducing otherwise inadmissible evidence, typically, a prior inconsistent statement, on the pretext of attacking credibility. See: *Whitehurst v. Wright*, 592 F.2d 834 (5th Cir. 1979); Graham, "The Relationship Among Federal Rules of Evidence 607, 801 (d)(1)(A), and 403.[3]

*State v. Ford*, 544 So.2d 616 (La. App. 3rd Cir. 1989), decided "... makes clear that a party may not call a witness for the sole purpose of getting an otherwise inadmissible prior inconsistent statement

---

3    Pugh, Force, Rault & Triche, Handbook on Louisiana Evidence Law (2012).

before the jury under the guise of attacking the witness credibility."

This case is a "mirror" to the case of *State v. Cousin*, supra., as the State had introduced the prior out-of-court statement; not for the purpose of impeaching Mr. Gonzales, but to introduce testimony of substantive evidence to prove the guilt of Mr. Rodriguez-Hernandez in this matter. Other than the statement from Mr. Gonzales, the State had shown NO proof that Mr. Rodriguez-Hernandez had either prior knowledge or participation of the planned murder, or even of the fact that Mr. Rodriguez-Hernandez had known that a murder had taken place.

During Melvin Gonzales' testimony, where the prior statement was introduced, he testified to the fact that the authorities had questioned him about this murder during the course of detainment for a Possession of Cocaine charge. Mr. Gonzales testified to the fact that he had been threatened with a term of sixty (60) years for the Possession charge, but if he cooperated with the investigation of the murder, it was to his understanding the officials would not seek such a vast amount of time on his charge (See: Rec.pp. 797-819).

Mr. Gonzales further admitted that the purpose of this "self-serving" statement was in his penal interest at that time. Mr. Gonzales further testified that he had received ten (10) years on the charge of Possession of Cocain in Jefferson Parish. Mr. Gonzales "held fast" to the fact that the detectives had promised him that he would obtain assistance with his pending cocaine charge, provided that he gave favorable information with the State's case against Mr. Rodriguez-Hernandez's involvement in the murder.

It should be noted that during the course of the examination, Mr. Gonzales did not offer testimony different from his statement, just the fact that, "Well, he never told me. I made up that because I was trying to get out of that mess that I was in behind the cocaine" (See: Rec.p. 805), and that, "I didn't deny it. Like I said, if I said something to the detective or whatever, I said it cause I was scared. If I

made a comment whatever about Luis told me this or that, I probably was scared" (Rec.p. 808).

One important factor that should be noted during the course of Mr. Gonzales' testimony, the State never denied the fact that Mr. Gonzalez was coerced into giving a statement favorable to the State, but instead, "specifically" informed the jury that Mr. Gonzales "had" to be talking about the authorities in Jefferson Parish, not St. Tammany Parish. Simply put, the State **did not** deny the fact that Mr. Gonzales was coerced into giving a statement against Mr. Rodriguez-Hernandez, just that the coercion had happened with the authorities in another parish (Jefferson Parish; See: Rec.pp. 860-861).

During the examination of Mr. Gonzales, the prosecutor was the one making references to the statement made by Mr. Gonzales. Mr. Gonzales kept testifying that he could not recall what he had told the detectives. As the State was not using the recorded statement to impeach Mr. Gonzales; only to use the statement as substantive evidence of Mr. Rodriguez-Hernandez's guilt of the matter, this is a "true" reflection of the case of *State v. Cousin*, supra.

Mr. Rodriguez-Hernandez contends that the State was aware of the fact that Mr. Gonzales had elected **not** to testify in behalf of the State prior to the commencement of trial. During the course of the trial, out of the presence of the jury, Mr. Dorskey informed the Court that, "Your Honor, basically one of my concerns is I think what they're doing is saying that despite the fact that informant is not going to want to say or say what they think it is, they're going to put him off as soon as the word, 'who,' then they're going to say 'Now, we want to introduce a prior unsworn statement that he gave to an investigator' and play that. In fact that's whey they have their computer."

WHEREFORE, for the reasons stated above, and after due consideration of the law and constitutional violation, this Court must reverse Mr. Rodriguez-Hernandez's conviction and sentence and Grant a new trial in this matter.

### Ineffective assistance of counsel:

### Deficient performance:

Mr. Rodriguez-Hernandez contends that he was denied effective assistance of counsel due to counsel's failure to object to the State's presentation of a previous unsworn statement by Mr. Gonzales under the guise of impeachment.

The Sixth Amendment guarantees those accused of crimes to have the assistance of counsel for their defense. Sixth Amendment to the United States Constitution. The purpose of this Sixth Amendment right to counsel is to protect the fundamental right to a fair trial. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L. Ed. 1461 (1938); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "The skill and knowledge counsel is intended to afford a defendant "ample opportunity to meet the case of the prosecution." *Strickland*, 466 U.S. at 685 (citing *Adams v. United States ex rel. McCann*, 317 U.S. 269, 275, 276, 63 S.Ct. 236, 240, 87 L.Ed. 268 (1942)).

Acknowledging the extreme importance of this right, the United States Supreme Court has held: That a person who happens to be a lawyer is present at trial alongside the accused ... is not enough to satisfy the constitutional command. The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair.

*Strickland v. Washington*, 466 U.S. at 685. Thus, the Court has recognized that "the right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763, 773 (1970).

"Counsel's ineffectiveness cries out from a reading of this transcript." *Douglas v. Wainwright*, 714 F.2d 1532, 1557 (11th Cir. 1983)(citing *Young v. Zant*, 677 F.2d 792, 798 (11th Cir. 1982); *Yarborough v. State*, 529 So.2d 659, 662 (Miss. 1988) (quoting *Waldrop v. State*, 506 So.2d 273, 275 (Miss. 1987)).

> While a defendant must ordinarily show that counsel's ineffective assistance resulted in actual prejudice, such a showing may be exempted where counsel's ineffectiveness is so pervasive as to render a particularized prejudice inquiry unnecessary.

*Frett v. State*, 378 S.E.2d 249, 251 (S.C. 1988) (citing *House v. Balkcom*, 725 F.2d 608 (11th Cir. 1984)).

A defendant's claim of ineffective assistance of counsel is to be assessed by the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Fuller*, 454 So.2d 119 (La. 1984). The defendant must show that: (1) counsel's performance was deficient; and (2) that the deficiency prejudiced the defendant. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. *State v. Sparrow*, 612 So.2d 191, 199 (La. App. 4 Cir. 1992).

"At the heart of effective representation is the independent duty to investigate and prepare." *Goodwin v. Balkcom*, 684 F.2d 794, 805 (11th Cir. 1982); accord *Porter v. Wainwright*, 805 F.2d 930, 933 (11th Cir. 1986); *Tyler v. Kemp*, 755 F.2d 741 (11th Cir. 1985); *Douglas v. Wainwright*, 714 F.2d 1532 (11th Cir. 1983), *vacated*, 104 S.Ct. 3575, 82 L.Ed.2d 874 (1984), *adhered to*, 739 F.2d 531 (1984). As the Court held in *Wade v. Armontrout*, 798 F.2d 304 (8th Cir. 1986): Investigation is an

essential component of the adversary process. "Because [the adversarial] testing process generally will not function properly unless counsel has done some investigation into the prosecution's case and into various defense strategies . . . 'counsel has a duty to make reasonable investigations. . . .'" Id. at 307 (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 2589, 91 L.Ed.2d 305 (1986) (quoting *Strickland v. Washington*, 466 U.S. 668, 691, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

However, the mere presence of an attorney does not satisfy the constitutional guarantee of counsel. As the Supreme Court has often noted, an accused is entitled to representation by an attorney, whether retained or appointed. "Who plays the role necessary to ensure that the trial is fair". *Morrison*, 477 U.S. at 377, 106 S.Ct. at 2584, quoting *Strickland v. Washington*, 466 U.S. 668, 685, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 274 (1984). "In other words, the right to counsel is the right to effective assistance of counsel, citing *Evitts v. Lucey*, 469 U.S. 387, 395-96, 105 S.Ct. 830, 835-36, 83 L.Ed 2d 821 (1985).

During the course of the trial, Mr. Melvin Gonzales was called to testify for the State. Prior to testifying before the jury, Mr. Gonzales was questioned by the Court concerning any pending charges which had not be resolved (Rec.pp. 797-98).

However, during the course of the testimony "out of the presence of the jury," defense counsel informed the Court that, "Your Honor, basically one of my concerns is I think that they're dong is saying that despite the fact that informant is not going to want to say or say what they think it is, they're going to put him off as soon as he said the work 'who,' then they're going to say 'Now, we want to introduce a prior unsworn statement that he given to an investigator and play that. In fact that's why they have their computer."

Simply put, defense counsel was aware that the State's intention was to introduce the prior statement as "substantive" evidence, rather than for impeachment purposes. See; *State v. Cousin*, 710 So.2d 1065 (La. 1998). However, counsel failed to object to the improper admittance of Mr. Gonzales'

statement.

***Prejudice:***

Counsel failed to object to the State's use of the prior inconsistent statement for "substantive" evidence rather than "impeachment" purpose. Defense counsel was fully aware of the fact that the State was unable to meet its burden of proof of the First Degree Murder, or any of the lesser responsive verdicts without the introduction of this statement given by Melvin Gonzales to the jury.

Counsel was aware of the fact that Mr. Gonzales had informed the State that he had only given a statement to the authorities due to the fact that he was being detained for a possession charge at that time and that the authorities had told him to say.

Furthermore, counsel had informed the Court during the colloquy out of the presence of the jury that the State was attempting to introduce this out-of-court statement as "substantive" evidence instead of for "impeachment" purposes as the State has stated (Rec.pp. 797-98). It was the counsel's duty to protect his client's constitutional rights during the course of this testimony. However, as it stands, trial counsel allowed the State to improperly introduce this out-of-court statement as impeachment evidence. Counsel was of the understanding from the onset of this testimony that Mr. Gonzales was unwilling to testify in this matter, and that the Court had threatened Mr. Gonzales with a charge of perjury (Rec.p. 799).

Had counsel lodged a contemporaneous objection when Mr. Gonzales had first stated that he could not remember what he had told the authorities, Mr. Gonzales' out-of-court statement would not have been heard by the jury. Due to the insufficiency of evidence to meet the burden of proof of First Degree Murder or any of the lesser responsive verdicts, the State improperly presented this statement to the jury in the hopes of the desired outcome. A conviction for either a First or Second Degree Murder against Mr. Rodriguez-Hernandez.

WHEREFORE, as Mr. Rodriguez-Hernandez has met both prongs of the Strickland standard, this Honorable Court must set aside this conviction and sentence at the conclusion of an evidentiary hearing concerning the valid constitutional violation of the Sixth Amendment to the United States Constitution due to the ineffective assistance of trial counsel in this matter.

## ISSUE NO. 4

**Mr. Rodriguez-Hernandez's 5th, 6th, and 14th Amendment rights of the United States Constitution were violated when his right to testify was taken from him.**

### *Standard of Review: Right to Testify*

Because "the most important witness for the defense in many criminal cases is the defendant himself," *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) deemed the accused's right to present his or her testimony at trial, "[e]ven more fundamental to a personal defense than the right to self-representation" under the Sixth Amendment. *Rock*, 483 U.S., at 52, 107 S.Ct., at 2709; see also: *United States v. Walker*, 773 F.2d 1173, 1179 (5th Cir. 1985)("Where the very point of a trial is to determine whether an individual was involved in criminal activity, the testimony of the individual himself must be considered of prime importance."). No matter how daunting the task, the accused therefore is entitled to his right to face jurors and address them directly without regard to the probabilities of success. As with the right of self-representation, denial of the accused's right to testify is not amenable to the harmless error analysis. The right "is either respected or denied; it's deprivation cannot be harmless." *McKaskle v. Wiggins*, 465 U.S. 168, 177, n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).

### *Argument:*

Mr. Rodriguez-Hernandez contends that several attempts were made to have trial counsel allow him to testify in this matter. Yet, trial counsel refused to allow Mr. Rodriguez-Hernandez to take the stand.

Trial counsel specifically, at one instance, informed Mr. Rodriguez-Hernandez that he would not allow Mr. Rodriguez-Hernandez to "to take the stand for any reason." A criminal defendant's right to testify is well-established by the Fifth and Fourteenth Amendments to the United States Constitution. Only the defendant may waive this right, not his counsel, and it must be shown to be knowing and voluntary.

The right to testify in one's behalf is one of the rights that is essential to Due Process in a fair adversarial proceeding. See: *Faretta v. California*, 422 U.S., at 819, no. 15, 95 S.Ct. 2525 (1975). In interpreting the Due Process Clause, the Supreme Court held:

> "[t]he necessary ingredients of the Fourteenth Amendment's guarantee that no one shall be deprived of liberty without Due Process of Law include a right to be heard and *offer testimony*." (emphasis added).

A person's right to reasonable notice of a charge against him and an opportunity to be heard in his defense – a right to his day in court – are basic in our system of jurisprudence; and these rights include, as a minimum, a right to examine the evidence against him, *to offer testimony*, and to be represented by competent counsel.

Mr. Rodriguez-Hernandez repeatedly informed his trial counsel that he wished to testify in his own behalf as to the truth of the matter. Mr. Rodriguez-Hernandez felt, and rightly so, that the testimony from the witnesses, without the jury being afforded the opportunity to hear directly from the defendant, would prejudice the truth of the matter and to his defense. Trial counsel had informed Mr. Rodriguez-Hernandez, in another instance, that **he felt** that Mr. Rodriguez-Hernandez did not need to testify because the State's prosecutor had the burden of proving the charges of First Degree Murder, and that he (trial counsel) was the one who made that ultimate determination as to whether he would testify or not to testify.

Mr. Rodriguez-Hernandez's counsel informed him that if he decided to take the stand in his own behalf, the State would be able to question him of his prior convictions in Florida. However, it should

be noted that Mr. Rodriguez-Hernandez had NO convictions for crimes of violence in Florida or Louisiana at the time of his trial. Mr. Rodriguez-Hernandez is also aware of the fact that even though the Court instructs the jury that it cannot be held against a defendant for not testifying; logically, a normal person would make a determination that a defendant would be hiding something be refusing to defend himself in Open Court.

A criminal defendant has a constitutional right to testify at trial which cannot be waived by defense counsel. *Hester v. United States*, 335 F.Appx. 949, 951 (11ᵗʰ Cir. 2009); *United States v. Teague*, 953 F.2d 1525 (11ᵗʰ Cir), *cert. denied*, ___ U.S. ___, 130 S.Ct. 311, 175 L.Ed.2d 206 (2009).

Mr. Rodriguez-Hernandez contends that the trial counsel never once informed him that it was his right to determine if he would testify at trial or not. Trial counsel never informed Mr. Rodriguez-Hernandez of a valid reason as to the failure to call him to testify other than the fact that the State would use his prior convictions against him. However, it must be noted that Mr. Rodriguez-Hernandez had NO prior violent crimes. Mr. Rodriguez-Hernandez's priors included only drug charges and non-violent charges from the State of Florida.

In *State v. Hampton*, 00-522 (La. 3/22/02), 818 So.2d 720, the Louisiana Supreme Court held: "As a matter of first impression, 1) Defendant had a constitutional right to testify in his own defense; 2) Defendant's constitutional rights were violated when he was prevented from testifying in his own behalf; and, 3) Denial of the right to testify, after criminal defendant unequivocally made known his desire to do so, was not amendable to harmless-error.

It cannot be permissible trial strategy, regardless of it's merits otherwise, for counsel to override the ultimate decision of a defendant to testify contrary to his advice. When a defendant asserts that he desires to exercise his constitutional right to testify truthfully, counsel's direct duty is to inform the defendant why he believes this course will be unwise or dangerous. If a defendant insists on testifying,

however irrational that insistence might be from a tactical viewpoint, counsel must accede. A defendant's personal right to testify truthfully in his own behalf may not be waived by counsel as a matter of strategy. If defense counsel refuses to accept the defendant's decision to testify and would not call him to the stand, counsel has acted unethically to prevent the defendant from exercising his fundamental constitutional right to testify. Under such circumstances, defense counsel has not acted "within the range of competence demanded of attorneys in criminal cases; and the defendant clearly has not received reasonably effective assistance of counsel." To hold otherwise is to ignore the fact that the defendant's right to testify is secured by the Constitution and only he can waive it.

Mr. Rodriguez-Hernandez expressed his desire to testify [to his counsel] numerous times prior to, and during trial; and counsel alone chose to prevent his testimony. This was a First Degree Murder case, and Mr. Rodriguez-Hernandez fully expected to be able to tell his side of the story in his own defense. Mr. Rodriguez-Hernandez was best suited to meet the State's case, as it was primarily built upon circumstantial evidence. Had Mr. Rodriguez-Hernandez testified, he would have explained to the jury that he was present at the crime, but was unaware of Carlos' intention of committing a murder; and did not know about the crime. This defective performance by trial counsel was so serious that it denied Mr. Rodriguez-Hernandez of a fair trial, a trial whose result is reliable.

Mr. Rodriguez-Hernandez further notes that trial counsel did not allow him the opportunity to express to the Judge as to wanting to testify; along with the fact that the trial Judge failed to make such an inquiry of the waiver from Mr. Rodriguez-Hernandez. Mr. Rodriguez-Hernandez was never afforded the opportunity through the Court as defense counsel had explained what the Court's reaction would be in the event that Mr. Rodriguez-Hernandez spoke without being directly addressed by the trial Judge. Therefore, Mr. Rodriguez-Hernandez could not interrupt the Court; and if he did, he feared possible retribution by the trial Judge of **Contempt of Court** or being **banished from his own trial**.

Let it be noted that the record fails to reflect that a colloquy was ever obtained between the attorney, defendant, and Judge, where Mr. Rodriguez-Hernandez stated that he voluntarily waived his right to testify in this matter. However, such silence does not raise irrebuttable presumption of a waiver. In other words, we must determine whether [defendant] made "a knowing, voluntary and intelligent waiver of his right to testify." *U.S. v. Teague*, 908 F.2d 752, 759 (11ᵗʰ Cir. 1990); *rehearing granted*, 953 F.2d 1525, *cert. denied*, 113 S.Ct. 127.

WHEREFORE, for the foregoing reasons, and after due consideration of this constitutional violation, this Honorable Court deem that Mr. Rodriguez-Hernandez was denied his Fifth and Fourteenth Amendment rights to testify in his own behalf, and Grant a new trial in this matter. In the alternative, this Honorable Court should conduct an evidentiary hearing in order to obtain testimonial evidence to properly determine the assertions in this constitutional violation.

## CONCLUSION AND PRAYER

**WHEREFORE, PREMISES OF PETITIONER CONSIDERED:**

Petitioner, Luis Rodriguez-Hernandez #596226, respectfully prays that this Honorable Court will accept his foregoing "Memorandum of Law in Support of Petition for Federal Habeas Corpus" and consider same in concert with his "Application for Federal Habeas Corpus" pursuant to *28 U.S.C.A. § 2254*. Mr. Rodriguez-Hernandez, further prays that this Honorable Court, after due consideration of the law and the facts presented by Petitioner in these proceedings, that Petitioner is granted federal habeas corpus and that his underlying state conviction and sentence is vacated, and set aside.

Respectfully submitted,

Luis Rodriguez-Hernandez, #596226
Camp-C/Bear-1
Louisiana State Penitentiary
Angola, Louisiana 70712

## CERTIFICATE OF SERVICE

I, <u>Luis Rodriguez-Hernandez #596226</u>, hereby certify that a true and correct copy of the forgoing has been served upon the Respondent herein, through the Office of the District Attorney, Parish of St. Tammany, by placing same in the Institution's Legal Mail System for depositing in the U.S. Mail, properly addressed and with proper, first-class postage pre-paid, this <u>19</u>[th] day of <u>April</u>, <u>2018</u>.

Luis Rodriguez-Hernandez